## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 3:20-cr-122-VLB** |
| | : | |
| **v.** | : | |
| | : | **December 28, 2021** |
| **Quayshon Sharpe** | : | |

## MEMORANDUM OF DECISION ARTICULATING THE REASONS FOR THE COURT'S SENTENCE

On December 22, 2021, The Court sentenced Quayshon Sharpe to 26 months incarceration, three years supervised release, and a $100.00 special assessment after he pled guilty to unlawful possession of a firearm by a felon, in violation of §§ 922(g)(1) and 924(a)(2). The Court imposed a below-guidelines sentence based on a total offense level of 19 and a criminal history category of II. The guidelines range is 33-41 months incarceration, 1-3 years supervised release, and a $10,000 - $100,000 fine. The Court will discuss the relevant facts and then articulate the reasons for the sentence.

## BACKGROUND

### I.      Offense Conduct

On January 7, 2020, New Haven police executed a search warrant at Mr. Sharpe's residence that led to the recovery of three firearms, ammunition, shotgun shells, and a rifle magazine. Specifically, a black Saiga 7.62 caliber "AK" style unloaded rifle was recovered from a bedroom closet on the third floor of the home in what appears to be a child's room, a black Mossberg 500 12-gauge unloaded shotgun was recovered from a closet on the third floor off the living room, a Llama

1

Minimax .45 caliber loaded handgun was recovered from a backpack on the second floor next to children's toys, a high capacity rifle magazine capable of holding 30 rounds was recovered from under the living room couch on the third floor, and a black plastic bag containing six shotgun shells was recovered from the dining room on the second floor.[1] [Dkt. 46 (Presentence Investigation Report) ¶ 14]. The high-capacity rifle magazine fit into the "AK" style rifle. [*Id.*].

Mr. Sharpe cares for his autistic brother, who resides on the second floor of the residence. [*Id.* at ¶ 49]. He has two four-year-old children. Though neither child lives with him, Mr. Sharpe frequently cares for them. [*Id.* at ¶ 57].

II.    Custodial Status

After his arrest, Mr. Sharpe was in state custody for approximately four months before he was released on bond on May 18, 2020. [*Id.* at ¶ 43]. Mr. Sharpe was then arrested on charges before this Court on August 28, 2020. On August 31, 2020, United States Magistrate Judge Sarah Merriam released Mr. Sharpe on $25,000 non-surety bond and set conditions of release that included home confinement and location monitoring. [Dkt. 9 (Order Setting Conditions of Release)]. These conditions restricted Mr. Sharpe to his residence at all times except for employment, education, religious services, medical, substance abuse, or mental health treatment, attorney visits, court appearances, court-ordered obligations, or activities approved in advance by the pretrial services office. [*Id.*].

---

[1] Photos provided by the Government show the rifle leaning against the wall of the closet in a room filled with children's toys. The closet does not have a door and is separated from the room by a curtain. Another photo shows toys next to the backpack recovered on the second floor.  [Dkt. 50 (Gov. Sentencing Mem. Exs. E and F)]

On March 1, 2021, in response to Mr. Sharpe's motion to modify his conditions of release, the Court replaced home confinement with a curfew from 8:00 PM to 8:00 AM and eliminated electronic monitoring. [Dkt. 31]. Mr. Sharpe did not receive any violations during his release on pretrial supervision.

III.    Medical History

Mr. Sharpe was diagnosed with hypertrophic cardiomyopathy as a teenager. He has undergone several surgeries since his diagnosis and requires frequent monitoring by his medical team. *See* [Dkt. 46 ¶ 60]. Mr. Sharpe's sentencing was originally scheduled for October 6, 2021. On that date, the Court continued the sentencing and ordered the parties to work together to determine whether the Bureau of Prisons has the capacity to deal with Mr. Sharpe's medical condition.

A letter from Mr. Sharpe's medical provider details the type and frequency of care Mr. Sharpe requires. [Dkt. 61.] In response to this letter, the BOP issued a letter assuring that it could provide Mr. Sharpe with the "necessary and appropriate care should he be sentenced to a term of incarceration in a federal correctional facility." [Dkt. 58].

For the reasons set forth below and on the record at Mr. Sharpe's sentencing on December 22, 2021, the Court imposed a below-guidelines sentence of 26 months.

## REASONS FOR THE SENTENCE

I.    Application of Enhancement

The Government and Mr. Sharpe disagreed on whether the "AK" style rifle and high-capacity magazine were in close proximity to each other as is required

3

for the enhancement under U.S.S.G. § 2K2.1(a)(4)(B) to apply. The Court found that the rifle and magazine were in close proximity and applied the enhancement.

a.  *Guidelines Provision at Issue*

Mr. Sharpe pled guilty to unlawful possession of a firearm by a felon, in violation of U.S.S.G. §§ 922(g)(1) and 924(a)(2). The applicable sentencing guideline is § 2K2.1.

The Government and Probation believe that § 2K2.1(a)(4)(B) applies. § 2K2.1(a)(4)(B) states: "the base offense level is 20, if the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine…." The application notes to this section state:

> For [the purpose of subsection (a)(4)] a "*semiautomatic firearm that is capable of accepting a large capacity magazine*" means a semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm.

Mr. Sharpe argues that § 2K2.1(a)(6) applies, this subsection states: "the base offense level is 14 if the defendant was a prohibited person at the time the defendant committed the instant offense…." The application notes define "prohibited person" as "any person described in 18 U.S.C. § 922(g)…", the offense to which Mr. Sharpe pled guilty.

The disputed issue here is whether the unloaded "AK" style rifle recovered in a closet in a child's room on the 3rd floor was in close proximity to the high-capacity rifle magazine recovered in a bag in the living room also on the 3rd floor.

4

### b. *Presentence Investigation Report Distance Calculation*

The Final PSR stated that the rifle and magazine were 10 to 13 feet away from each other. [Dkt. 46 ¶ 80]. Mr. Sharpe contested the accuracy of this calculation and provided photographs of the scene with a tape measure to show that the actual distance between the rifle and the magazine was 30 to 40 feet. *See* [DKT 48 (Def. Sentencing Mem. and Exs.)]. In Footnote 4 of their Sentencing Memorandum, the Government acknowledges that the 10 to 13 foot distance referred to in the PSR was a "guestimate." [DKT 49 p. 15]. The Court, over the Government's opposition, credited Mr. Sharpe's calculation and ordered Probation to amend the PSR to reflect Mr. Sharpe's calculation of 30 feet.

### c. *Close-Proximity*

The 2nd Circuit has not defined "close proximity" in the context of Application Note 2 of U.S.S.G. § 2K2.1(a)(4)(B). Therefore, the Court relies on decisions from other circuits to determine whether the rifle and high-capacity magazine were in close proximity for purposes of the enhancement.

### i. *Mr. Sharpe's Argument*

Mr. Sharpe urges the Court to define "close proximity" as two items in the same room. [DKT 48 p. 13]. He cites to *United States v. Gordillo* where the 11th Circuit, interpreting Application Note 2, found that a gun and magazine were in close proximity where the magazine was "no more than ten feet away in the same small bedroom." 920 F.3d 1292, 1300 (11th Cir. 2019). In reaching this conclusion, the *Gordillo* court analyzed the "physical distance and accessibility" of the objects. *Id.*

Turning to the 2nd Circuit's interpretation of "close proximity" in other contexts, Mr. Sharpe relies on cases where the court found close proximity existed where the objects were very close to each other in the same room. *See United States v. Lee*, 100 F.3d 944 (2d Cir. 1996) (a gun under a mattress and a scale with drug residue beneath the bed are in close proximity to one another); *United States v. Glover*, 529 F. App'x 90 (2d Cir. 2013) (a gun found in the same foyer bench as drugs were in close proximity to one another); *United States v. Konopski*, 685 F. App'x 63, 67 n.2 (2d Cir. 2017) (gun on a work bench in a garage near items used to manufacture methamphetamine were in close proximity to one another). Notably, Mr. Sharpe does not cite to any cases where a court did not find that close proximity existed.

At the first scheduled sentencing on October 6, 2021, the Court asked Attorney McGuire if there were any similar cases where courts have declined to apply the enhancement. In response, Mr. McGuire filed a supplemental sentencing memorandum referencing two district court cases from the District of Columbia and the District of Idaho. [Dkt. 59 (Def. Supp. Mem.)]. Attorney McGuire provided the Court with transcripts from the sentencings in both these cases.

In *United States v. Brown,* Judge Amy Berman Jackson declined to apply the enhancement to a firearm and high-capacity magazine found in the same home, one under a mattress and the other in a hall closet. [Dkt. 59-1 (Ex. 6 Transcript of Sentencing at 9, *United States v. Brown*, 20-CR-239-1 (D.D.C. October 5, 2021))]. However, this issue was not before or decided by the court because neither party argued that the enhancement should apply. [*Id.*]  Moreover, there are no facts on

6

the record about the layout of the home or the circumstances under which they were found.

In *United States v. Umbaugh*, Judge David Nye also declined to apply the enhancement to a firearm and high-capacity magazine located in the same trailer home. [Dkt. 59-1 (Ex. 6 Transcript of Sentencing at 33, *United States v. Umbaugh*, 1:19-CR-00041-DCN (D. Idaho December 9, 2019))]. In *Umbaugh*, the defendant's relative gathered up the defendant's firearms and placed them in one location inside the trailer before calling the police. When the police arrived, they observed several high-capacity magazines in the trailer along with the firearms. [*Id.*] Judge Nye found that he could not apply the enhancement because there was no evidence about where the firearms were located prior to the relative collecting them for law enforcement. [*Id.*] The Court does not find either of these cases particularly enlightening because they are not analogous to the facts in Mr. Sharpe's case.

### ii. Government's Argument

The Government argues, and the Court agrees, that there is no bright line rule in determining close proximity. The Government rejects Mr. Sharpe's interpretation of *Gordillo* as a limitation on close proximity and instead asks the Court to apply the "physical distance and accessibility" framework that the *Gordillo* court used to determine the existence of close proximity. *Id.*

The Government cites to several cases from different circuits interpreting close proximity to include two objects in different rooms. In *United States v. Ochoa*, the 11th Circuit applied *Gordillo* to find that a firearm found in a case outside the home was in close proximity to a magazine found in a bedroom inside the home.

941 F.3d 1074 (11th Cir. 2019). Again, in *United States v. Capello*, the 11th Circuit applied *Gordillo* to find that firearms in a defendant's bedroom while the defendant was conducting a drug deal in his driveway satisfied the close proximity requirement for the enhancement that applies when firearms are in close proximity to drugs. 793 Fed. App'x 842 (11th Cir. 2019). Mr. Sharpe's case is most analogous to *United States v. White*, where the 8th Circuit found it was not plain error for the sentencing court to apply the enhancement when a rifle was recovered in the living room and the magazine in an upstairs bedroom. 701 Fed. Appx. 517 (8th Cir. 2017).

Applying *Gordillo's* "physical distance and accessibility" test, the Court finds that the rifle was in close proximity to the magazine. They were on the same floor of the same apartment just 30 feet apart.  The apartment had an open floor plan. Neither the rifle nor the magazine were locked up or their accessibility otherwise obstructed.  Each was readily accessible to any occupant of the home. Even at 30 feet apart, a person could have connected the magazine to the rifle and discharged it within a minute.

For these reasons, the Court finds the rifle and the magazine were sufficiently close and accessible to each other to apply the enhancement under U.S.S.G. § 2K1.1(a)(4)(B).

II.    **Lack of Pretrial Release Violations**

At his December 22, 2021 sentencing, Mr. Sharpe argued that the Court should impose a non-incarceratory sentence because he has turned his life around and become a productive member of the community. He would like the opportunity

8

to continue working and staying out of trouble. Mr. Sharpe cites to his lack of violations while on pretrial release in support of this contention.

The Court does not find this argument compelling. Mr. Sharpe was not at liberty during the pendency of his case as he suggests. He was arrested for this crime approximately two years ago. He was in state custody for four months following his arrest and then on home confinement and electronic monitoring for seven months after he was arrested on the federal indictment. For the last ten months, he has had an 8:00 PM to 8:00 AM curfew. Though Mr. Sharpe has obtained training and a job since the commencement of this case, he has had little opportunity to engage in criminal activity.  He has been largely incapacitated by being either in penal or community custody or under intense supervision for 21 of the last 24 months.   As such he has not demonstrated that a custodial sentence is not warranted to satisfy the 18 U.S.C. § 3553 factors.

III.    BOP Capacity to Satisfy Mr. Sharpe's Medical Needs

The Court finds that the BOP has the capacity to meet Mr. Sharpe's medical needs.

<u>CONCLUSION</u>

For the foregoing reasons and in consideration of the 18 U.S.C. § 3553 factors discussed on the record at Mr. Sharpe's sentencing on December 22, 2021, and in particular his medical condition and vocational achievement, notwithstanding the seriousness of  a firearm offense in the midst of escalated urban gun violence, the Court imposed a sentence of 26 months incarceration, 3

9

years supervised release, and a $100.00 special assessment, concluding that it was

sufficient, but not greater than necessary, to achieve the purposes of sentencing.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: December 28, 2021